1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PETER A. TAYLOR,

11              Petitioner,              No. CIV-S-04-0981 LKK KJM P

12        vs.

13   TOM L. CAREY,                       ORDER AND

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for writ of

17   habeas corpus under 28 U.S.C. § 2254.  He is currently serving a sentence of seven-years-to-life

18   imprisonment in the California Department of Corrections.  Petitioner challenges 1994, 1996,

19   1998 and 2001 denials of parole.  Pet at 6.  Respondent has filed a motion to dismiss.  Petitioner

20   has also filed several motions.

21   I.  Motion To Dismiss

22        A.  Failure To Present A Federal Question

23              Respondent argues that petitioner's challenges to denial of parole fail to state a

24   claim upon which relief can be granted.  An application for a writ of habeas corpus by a person in

25   custody under a judgment of a state court can be granted only for violations of the Constitution or

26   /////

                                    1

1  laws of the United States.  28 U.S.C. § 2254(a).  For reasons that follow, this court finds as a

2  threshold matter that petitioner states a valid habeas claim.

3          1.  <u>Dannenberg and Sass</u>

4          In <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 7, 11 (1979), the United

5  States Supreme Court found that an inmate has "no constitutional or inherent right" to parole,

6  even when a state establishes a system of conditional release from confinement.  The Court

7  recognized, however, that the structure of parole statutes might give rise to a liberty interest in

8  parole that would, in turn, mean an inmate was entitled to certain procedural protections.  <u>Id.</u> at

9  14-15.  In <u>Greenholtz</u>, the Court found that the "mandatory language and the structure of the

10 Nebraska statute at issue" created such a liberty interest.  <u>Board of Pardons v. Allen</u> (<u>Allen</u>), 482

11 U.S. 369, 371 (1987).   What the court found significant in the Nebraska statute and later, in

12 <u>Allen</u>, in the Montana parole statutes, was mandatory language: the use of the word "shall" and

13 the presumption that parole would be granted unless certain conditions were shown to exist.

14 <u>Greenholtz</u>, 442 U.S. at 11-12; <u>Allen</u>, 482 U.S. at 377-78.

15         In <u>McQuillion v. Duncan</u>, 306 F.3d 895 (9th Cir.  2002), the Ninth Circuit used

16 the <u>Greenholtz</u>-<u>Allen</u> framework to determine whether California statutes created a liberty

17 interest in parole.  The critical statute at issue in <u>McQuillion</u> is California Penal Code section

18 3041, which provides in relevant part:

19         (a) . . . One year prior to the inmate's minimum eligible parole
           release date a panel . . .  shall again meet with the inmate and shall
20         normally set a parole release date as provided. . . .The release date
           shall be set in a manner that will provide uniform terms for
21         offenses of similar gravity and magnitude in respect to their threat
           to the public,  and that will comply with the sentencing rules that
22         the Judicial Council may issue and any sentencing information
           relevant to the sentencing of parole release dates. . . . .

23
           (b) The panel . . . shall set a release date unless it determines that
24         . . . consideration of the public safety requires a more lengthy
           period of incarceration. . . .

25

26 /////

                                                2

1  The Ninth Circuit found that subdivision (b) was like the statutes in both <u>Greenholtz</u> and <u>Allen</u>:

2  > California's parole scheme gives rise to a cognizable liberty interest
3  > in release on parole. The scheme "'creates a presumption that
   > parole release will be granted'" unless the statutorily defined
4  > determinations are made.

5  <u>McQuillion</u>, 306 F.3d at 901-02.  Again in <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003),

6  the Court of Appeals reiterated its holding that the California parole scheme created a liberty

7  interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the

8  question because its "language clearly parallels the language" under consideration in <u>Greenholtz</u>

9  and <u>Allen</u>.  <u>See also</u> <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 654 (2002), <u>cert. denied</u>, 538 U.S. 980

10  (2003) (discussing § 3041(b), the California Supreme Court noted "parole applicants . . . have an

11  expectation that they will be granted parole unless the Board finds . . . that they are unsuitable in

12  light of the circumstances specified by statute and regulation").

13      Respondent argues that the legal landscape has been changed by the combined

14  impact of three cases decided after <u>Greenholtz</u> and <u>Allen</u>:  <u>In re Dannenberg</u>, 34 Cal.4th 1061

15  (2005), <u>cert. denied</u>, ___ U.S. ___, 126 S. Ct. 92 (2005), <u>Sass v. California Board of Prison</u>

16  <u>Terms</u>, 376 F.Supp.2d 975 (E.D. Cal. 2005),[1] and <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  In

17  <u>Dannenberg</u>, the California Supreme Court noted:

18  > Our conclusion that California's parole statutes allow the Board to
   > find unsuitability without engaging in a comparative analysis of
19  > other offenses or applying "uniform term" principles, and that the
   > Board adhered to state law in Dannenberg's case also disposes of
20  > his contention that he was denied federal due process rights arising
   > from his protected liberty interest, and expectation, in a "uniform"
21  > parole date.

22  <u>Dannenberg</u>, 34 Cal.4th at 1098 n.18.  In <u>Dannenberg</u>, the court resolved the "tension between

23  the commands in subdivisions (a) and (b)" of Penal Code section 3041, and the question whether

24  "the public-safety provision of subdivision (b) takes precedence over the 'uniform terms'

25  _____

26      [1] <u>Sass</u> has been appealed to the Ninth Circuit Court of Appeal, with oral argument
   scheduled for March 16, 2006.  <u>See</u> Case No. 05-16455 (9th Cir. Aug. 1, 2005).

1  principle of subdivision (a)." Id. at 1081-82.  To answer the question, the court examined related

2  legislation, statutory language, case law and agency interpretations.  It noted that

> 3  [s]o long as the Board's finding of unsuitability flows from
> pertinent criteria, and is supported by "some evidence" in the
> 4  record before the Board, the overriding statutory concern for public
> safety in the individual case trumps any expectancy the
> 5  indeterminate life inmate may have in a term of comparative
> equality with those served by other similar offenders.  Section 3041
> 6  does not require the Board to schedule an inmate's release when it
> reasonably believes the gravity of the commitment offense
> 7  indicates a continuing danger to the public, simply to ensure that
> the length of the inmate's confinement will not exceed that of
> 8  others who committed similar crimes.

9  Id. at 1084 (internal citation omitted).  The court recognized the Board's broad discretion in

10  determining an inmate's suitability for parole, but also recognized that "the current statute

11  requires the Board to act in each case, either by setting a parole release date, or by expressly

12  declining to do so for reasons of public safety."  Id. at 1098.  Its ultimate holding is this:

> 13  We therefore hold that the Board proceeded lawfully when,
> without comparing Dannenberg's crime to other second degree
> 14  murders, to its base term matrices, or to the minimum statutory
> prison term for that offense, the Board found him unsuitable to
> 15  receive a fixed and "uniform" release date by pointing to some
> evidence that the particular circumstances of his crime . . .
> 16  indicated exceptional callousness and cruelty with trivial
> provocation, and thus suggested he remains a danger to public
> 17  safety.

18  Id. at 1098.  What Dannenberg did, then, was to find that the provisions of section 3041(a),

19  which appear to require the Board to set a minimum, uniform term, did not create a liberty

20  interest in parole, because the parole board was required to undertake the public safety inquiry of

21  subdivision (b) before setting a uniform term.  Because the Ninth Circuit's determination in

22  McQuillion that the statute does create a liberty interest in parole is based on subdivision (b),

23  Dannenberg does not undercut the McQuillion holding.

24       The California Supreme Court in Dannenberg did discuss subdivision (b) at

25  length.  In the course of that discussion, it noted that the word "shall" in both subdivisions is not

26  used in the absolute sense, but rather is limited in subdivision (b) "by 'unless,' followed by the

4

1   rule that the Board should *not* set a release date if 'consideration of the public safety' requires

2   lengthier incarceration for the particular inmate." Id. at 1087 (emphasis in original).

3             In Sass, the second case relied on by respondents, the district court relied on the

4   Dannenberg definition of "shall," the statutory scheme of section 3041, California jurisprudence

5   denying the existence of a right to parole, and the broad discretion given to the parole board to

6   conclude that the California statute does not create a liberty interest in parole. Sass,

7   376 F.Supp.2d at 982-83.

8             As noted above, however, the California Supreme Court's focus in Dannenberg

9   was the minimum and/or uniform term provisions of subdivision (a), not the contours of

10   subdivision (b) as a separate provision. That court's exegesis of the statutory scheme was

11   designed to resolve the tension between the two subdivisions; in so doing, it rejected the notion

12   that subdivision (a) created any liberty interest in a uniform date or otherwise took precedence

13   over the public safety concerns of subdivision (b). The court did not hold that subdivision (b)

14   similarly did not give rise to a liberty interest in parole, though it had the opportunity to do so.

15             Moreover, the Dannenberg court did not overrule Rosenkrantz, but instead relied

16   on that case throughout its explication of the state's parole scheme. See, e.g. Dannenberg, 34

17   Cal.4th at 1082 (relying on Rosenkrantz's description of the parole board's discretion). Thus,

18   Rosenkrantz's recognition that "[t]he judicial branch is authorized to review the factual basis of a

19   decision of the Board denying parole in order to ensure that the decision comports with the

20   requirements of due process of law" and of inmates' expectation they will be granted parole

21   absent public safety considerations remains intact. Rosenkrantz, 29 Cal.4th at 618, 654, 658.

22             The limited nature of Dannenberg's reach is illustrated by the decisions of the

23   state Courts of Appeal that have considered parole habeas petitions after Dannenberg's

24   publication. In In re Fuentes, 135 Cal.App.4th 152, 160-61 (4th Dist. 2005), the court described

25   Dannenberg as clarifying parole standards in its rejection of the notion that the Board must

26   undertake a comparative analysis of similar crimes before denying parole based on public safety

1    concerns.  See also In re Lowe, 130 Cal.App.4th 1405, 1418-19 (6th Dist. 2005) (parole is the

2    rule rather than the exception); In re DeLuna, 126 Cal.App.4th 585, 591 (6th Dist. 2005) (a court

3    must consider whether the Board's procedures satisfy due process); In Re Shaputis, 135

4    Cal.App.4th 217, 227 (4th Dist. 2005) ("We are charged with the obligation to ensure the BPT's

5    decision comports with the requirements of due process of law . . .").

6            Taking into account Dannenberg in its entirety, and its state court progeny, the

7    undersigned is of the opinion that the California Supreme Court described the word "shall" in

8    subdivision (b) as "not used in an absolute sense" only because it was limited by the phrase

9    "unless it [the Board] determines that . . . consideration of the public safety requires a more

10   lengthy period of incarceration."  The court did not say "shall" was no longer a command, only

11   that the command had modifiers.

12           The limitation recognized by the California Supreme Court does not

13   fundamentally alter this court's understanding of California's parole statute at this point in time.[2]

14   The United States Supreme Court found the Nebraska law under consideration in Greenholtz to

15   create a liberty interest in parole even though the law said the parole board "shall order [an

16   inmate's] release unless it is of the opinion that his release should be deferred" for several

17   specified reasons.  Greenholtz, 442 U.S. at 11.  The Montana statute at issue in Allen provided

18   that "the board shall release" inmates "when in its opinion" certain requirements were met.

19   Allen, 482 U.S. at 376-77.  As the Court explained:

            We reject the argument that a statute that mandates release "unless" certain
20          findings are made is different from a statute that mandates release "if,"
            "when," or "subject to" such findings being made.  Any such statute
21          "creates a presumption that parole release will be granted."

22

23   Id. at 378.  Subdivision (b) is the fraternal twin of the statute in Greenholtz; whether or not

24   "shall" is used in an absolute sense, the statute creates a liberty interest in parole.

25   _____

26        [2]  See Sass v. California Board of Prison Terms, Case No. 01-CIV-S-0835 MCE KJM
     (E.D. Cal.), Findings and Recommendations filed Mar. 16, 2005 at 4-5.

                                                        6

1    That California's parole board exercises broad discretion in making parole

2    determinations is not inconsistent with the determination that the statute creates a liberty interest

3    in parole. In <u>Greenholtz</u>, the Supreme Court recognized the similar "broad discretion" vested in

4    the parole board, but found a liberty interest even so. <u>Greenholtz</u>, 442 U.S. at 13. Respondent

5    has offered no reason why this aspect of <u>Greenholtz</u> is no longer valid.

6    2. <u>Sandin</u>

7    In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the United States Supreme Court

8    addressed the question of when due process liberty interests are created by internal prison

9    regulations. The Court concluded it would abandon an examination of "mandatory language"

10   and instead focus its liberty interest inquiry on ensuring "freedom from restraint which ...

11   imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

12   prison life." <u>Id.</u> at 484. Respondent argues this standard now governs the determination of

13   whether section 3041(b) creates a liberty interest in parole.

14   In <u>McQuillion</u>, 306 F.3d at 903, and again in <u>Biggs</u>, 334 F.3d at 914-15, the Ninth

15   Circuit rejected the application of <u>Sandin</u> to a determination of whether a statute creates a liberty

16   interest in parole. <u>See also Sass</u>, 376 F.Supp.2d at 980-81. Respondent cites cases from other

17   circuits that have applied <u>Sandin</u> in cases that do not raise challenges to conditions of

18   confinement. Respondent points to no Supreme Court or Ninth Circuit authority in support of

19   his position. Based on the record before it, and its reading of the case law, this court is bound to

20   follow <u>McQuillion</u> and <u>Biggs</u>.

21   B. <u>Statute Of Limitations</u>

22   Respondent argues that petitioner's challenges to his 1994, 1996 and 1998 parole

23   /////

24   /////

25   /////

26   /////

1   hearings are barred by the applicable statute of limitations.  Title 28 U.S.C. § 2244(d)(1) provides

2   as follows:

3              A 1-year period of limitation shall apply to an application for a writ
             of habeas corpus by a person in custody pursuant to the judgment
4             of a State court.  The limitation period shall run from the latest of –

5             (A) the date on which the judgment became final by the conclusion
             of direct review or the expiration of the time for seeking such
6             review;

7             (B) the date on which the impediment to filing an application
             created by State action in violation of the Constitution or laws of
8
             the United States is removed, if the applicant was prevented from
9             filing by such State action;

10            (C) the date on which the constitutional right asserted was initially
             recognized by the Supreme Court, if the right has been newly
11            recognized by the Supreme Court and made retroactively
             applicable to cases on collateral review; or
12
             (D) the date on which the factual predicate of the claim or claims
13            presented could have been discovered through the exercise of due
             diligence.
14

15  28 U.S.C. § 2244(d)(1).

16            Because 28 U.S.C. § 2244(d)(1) was not enacted until April 24, 1996, the

17  limitations period cannot start until that day.  See Calderon v. United States District Court

18  (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997), overruled on other grounds, Calderon v. United

19  States District Court (Central Dist.), 163 F.3d 530 (9th Cir. 1998).

20            Regarding denials of parole, the Ninth Circuit Court of Appeals has found that

21  section 2244(d)(1)(A) is inapplicable.  Redd v. McGrath, 343 F.3d 1077, 1081-82 (9th Cir.

22  2003).  In most cases, with respect to a challenge to the denial of parole, the limitations period

23  begins to run under section 2244(d)(1)(D) when the administrative process with respect to the

24  denial of parole is exhausted.  Id. at 1082.

25            With respect to petitioner's 1994 denial, petitioner was denied parole on

26

1    September 15, 1994.  Traverse, Ex. C.[3]  Petitioner had ninety days within which to seek

2    administrative review of the parole board's decision.  Resp't's "Response To Order Filed March

3    3, 2006."  Petitioner did not appeal the decision.  Resp't's "Response To Order Filed February 9,

4    2006."  Under these facts, the limitations period with respect to petitioner's challenge of his 1994

5    parole denial began to run on April 24, 1996 and ran out one year later.  This action was not filed

6    until December of 2003.  Because petitioner has not shown that he is entitled to any tolling of the

7    limitations period, his challenge to his 1994 parole denial is time-barred.

8         Petitioner was again denied parole on November 26, 1996.  Traverse, Ex. D.

9    Again, petitioner did not appeal the denial.  Resp't's "Response To Order Filed February 9,

10   2006."  The limitations period with respect to the 1996 denial began to run on February 25, 1997

11   and ran out one year later.  As with his challenge to the 1994 proceedings, petitioner has not

12   shown that he is entitled to any tolling of the limitations period.   Therefore, petitioner's

13   challenge to his 1996 parole denial is time-barred.

14        Petitioner did file an appeal with respect to his 1998 denial.  Mot. to Dismiss, Ex.

15   A. The appeal was denied on June 8, 1999.  Id.  Therefore, the limitations period began to run on

16   June 9, 1999 and ran out one year later.  As with the 1994 and 1996 denials, petitioner has not

17   shown that he is entitled to tolling of the limitations period with respect to the 1999 denial.  Like

18   the challenges to the 1994 and 1996 denials, petitioner's challenge to the 1999 denial is time-

19   barred.

20        C.  2001 Hearing

21   _____In "Ground 2" of his habeas application, petitioner asserts his 2001 parole hearing

22   was held nine months late.  Pet. at 13-15.  Respondent argues that this does not, as petitioner

23   suggests, amount to a violation of his Eighth Amendment rights.  With respect to the length of

24   prison sentences, the Eighth Amendment requires that a sentence for a term of years not be

25   _____

26        [3] Petitioner's traverse operates as his opposition to the motion to dismiss.

9

1  grossly disproportionate.  Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  Petitioner does not state

2  an Eighth Amendment claim.

3          Petitioner also claims, however, the fact that the hearing was late denied petitioner

4  due process.  See Pet. at 13-14.  With respect to "Ground 2," respondent need only respond in his

5  answer to the argument that holding the hearing late amounts to a violation of due process

6  guaranteed under the Fourteenth Amendment.

7          D.  Conclusion

8          Based on the foregoing, the court will recommend that any claim petitioner may

9  have arising from his 1994, 1996 and 1998 parole hearings be dismissed.  In all other respects,

10  the court will recommend that respondent's motion to dismiss be denied.

11  II.  Petitioner's Motions

12          Petitioner has filed motions seeking the appointment of counsel, discovery and

13  expansion of the record.

14          There currently exists no absolute right to appointment of counsel in habeas

15  proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  However, 18 U.S.C.

16  § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice

17  so require."  See Rule 8(c), Fed. R. Governing § 2254 Cases.  In the present case, the court does

18  not find that the interests of justice would be served by the appointment of counsel at the present

19  time.

20          Respondent has not filed an objection to either of petitioner's two motions to

21  expand the record.  Good cause appearing, the court will grant petitioner's motions, expanding

22  the record to include the documents attached to petitioner's May 31, 2005 "motion to lodging

23  evidence," and July 19, 2005 "motion to lodging of factual material."  See Rule 7, Rules

24  Governing Section 2254 Cases.

25          Petitioner asks permission to engage in discovery concerning a "no parole" policy

26  being implemented by the California Board of Prison Terms.  Because respondent has not yet

1    filed his answer and all relevant documents concerning state court proceedings concerning

2    petitioner's claims, the court cannot determine whether discovery is warranted.  Therefore, the

3    court will deny petitioner's motion for discovery without prejudice to refiling after respondent

4    files his answer.

5              In accordance with the above, IT IS HEREBY ORDERED that:

6              1.  Petitioner's June 1, 2005 motion for the appointment of counsel is denied.

7              2.  Petitioner's May 31, 2005 "motion to lodging evidence," construed as a motion

8    to expand the record, is granted.  The record is expanded to include the documents attached to

9    petitioner's May 31, 2005 motion.

10             3.  Petitioner's July 19, 2005 "motion to lodging of factual material" construed as

11    a motion to expand the record is granted.  The record is expanded to include the documents

12    attached to petitioner's July 19, 2005 motion.

13             4.  Petitioner's May 31, 2005 motion for discovery is denied without prejudice to

14    refiling after respondent files his answer.

15             IT IS HEREBY RECOMMENDED that:

16             1.  Respondent's June 27, 2005 motion to dismiss be granted in part and denied in

17    part as follows:

18                   A.  Granted as to any claims arising from petitioner's 1994, 1996 and 1998

19                   parole hearings; and

20                   B.  Denied in all other respects.

21             2.  Respondent be directed to file his answer within sixty days of any order

22    adopting the above findings and recommendations.

23             These findings and recommendations are submitted to the United States District

24    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

25    days after being served with these findings and recommendations, any party may file written

26    objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within five days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:  March 14, 2006.

UNITED STATES MAGISTRATE JUDGE

1
tayl0981.157